UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X

SANDY BERNSTEIN,

Plaintiff,

**MEMORANDUM & ORDER**

-against-　　　　　　　　　　　　　**11 CV 68 (DRH)(WDW)**

MOUNT ARARAT CEMETERY INC.,

Defendant.

------------------------------------------------------X

APPEARANCES:

**Eric E. Rothstein, Esq.**
Attorney for Plaintiff
11 Park Place – Suite 1801
New York, New York 10007

**Hammil, O'Brien, Croutier, Dempsey, Pender & Koehler, P.C**
Attorneys for Defendant
6851 Jericho Turnpike, Suite 250
P.O. Box 1306
Syosset, New York 11791
By:  Tina Yanover, Esq.


**HURLEY, Senior District Judge:**

　　　　Plaintiff brings this diversity action[1] alleging negligence and breach of contract

against the cemetery where she is to be buried, and where certain individuals in her

family have already been buried.  Before the Court are the parties' cross motions.

Plaintiff moves for partial summary judgment pursuant to Fed. R. Civ. P. 56 solely as to

liability on all of her claims, and to strike certain affirmative defenses set forth in the

---

[1] Plaintiff resides in Florida; defendant is a not-for-profit incorporated in New York, with a physical presence in Farmingdale, New York; and the amount in controversy exceeds $75,000. (Compl. ¶¶4-5, A-C.)

defendant's Answer to the Complaint. Defendant moves pursuant to Fed. R. Civ. P. 12(c), or in the alternative pursuant to Fed. R. Civ. P. 56 against all claims. As discovery in this case has been completed, and the parties have submitted evidence in support of their respective positions, the Court will address defendant's motion solely as one for summary judgment pursuant to Rule 56. For the reasons that follow, the parties' motions are granted in part and denied in part.

## BACKGROUND

This case arises from defendant allegedly burying two members of plaintiff's family in the wrong graves. According to the Complaint, plaintiff and her family intended for members of the family to be buried in accordance with the following diagram.

| Plot C-9 | | Plot C-10 | |
|---|---|---|---|
| Grave 1:<br>Abraham Geller ← (husband/wife) → | Grave 2:<br>Florence Geller ← (sisters) → | Grave 1:<br>**Sandy Bernstein** ← (wife/husband) → | Grave 2:<br>Harold Bernstein |
| Grave 3:<br>Geller (unspecified) | Grave 4:<br>Geller (unspecified) | Grave 3:<br>Trudy Kreutzer | Grade 4:<br>Arthur Kreutzer |

Instead, the gravesites were filled as follows:

| Plot C-9 | | Plot C-10 | |
|---|---|---|---|
| Grave 1:<br>(unfilled) | Grave 2:<br>Abraham Geller | Grave 1:<br>Florence Geller | Grave 2:<br>Harold Bernstein |
| Grave 3:<br>n/a | Grave 4:<br>n/a | Grave 3:<br>n/a | Grade 4:<br>n/a |

Abraham Geller and Florence Geller were therefore both buried in the wrong graves (C-9 grave 2 and C-10 grave 1, respectively, instead of C-9 grave 1 and C-9 grave

2 respectively).  As a result, unless Florence Geller's body is disinterred and moved, plaintiff will not be able to rest next to her husband, Harold Bernstein.  The parties do not dispute that the deceased individuals are currently buried in the manner set forth in the second diagram above.

Plaintiff brings two claims for negligence, and one claim for breach of contract. The first negligence claim asserts that defendant, in its capacity as a "cemetery," owed a duty to plaintiff (1) to "refrain from negligent conduct in burying her family members," (Compl. ¶ 31) and (2) to "ensure that no one was buried in the grave reserved for [plaintiff's] burial," (*id.* ¶ 32.) Defendant allegedly breached this duty by negligently causing both Abraham and Florence Geller to be buried in the wrong grave. (*Id.* ¶¶ 33-34.)

The second negligence claim asserts that defendant, in its capacity as an "undertaker," owed plaintiff only the first duty mentioned above, *viz.* to "refrain from negligent conduct in burying her family members." (*Id.* ¶ 38.)  This duty was allegedly breached solely by laying Florence Geller to rest in the wrong grave. (*Id.* ¶ 39.)  Both negligence claims allege that plaintiff suffered and continues to suffer from emotional distress from "seeing that" Abraham Geller was buried in the wrong grave, and that Florence Geller was buried in the grave reserved for plaintiff. (*Id.* ¶¶35-36, 40-41.)

Plaintiff's breach of contract claim relates to an agreement, executed on October 13, 1978, between defendant and plaintiff, her husband Harold Bernstein, her sister Florence Geller, her sister's husband Abraham Geller, and Arthur and Trudy Kreutzer. (*See* Contract, Def.'s Ex. C.)  Under the agreement, in consideration for a down payment and the promise of monthly payments, defendant issued two deeds: one for plot C-9, in

which Abraham and Florence Geller would "own" all four of the graves therein, and one for plot C-10, in which Harold and Sandra Bernstein would own graves one and two, and Arthur and Trudy Kreutzer would own graves three and four. (*Id.*) Incorporated by reference into the contract are the "Mount Ararat General Rules and Regulations," which include a provision requiring the submission to defendant of a "burial permit designating the grave to be used" before an internment can be made. (Cemetery Rules ¶ 3, Pl.'s Ex. C.)

The only injury alleged by plaintiff in the complaint as a result of placing Abraham and Florence Geller in the wrong graves is her emotional distress.

## DISCUSSION

### I. STANDARD OF REVIEW - Summary Judgment

Summary judgment should be granted where the pleadings and admissible evidence offered to the Court demonstrate "no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56; *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). Further, the relevant governing law determines which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Accordingly, where the undisputed facts demonstrate the union of all the required elements of a cause of action and no reasonable

juror could find otherwise, the plaintiff is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case.").

A party may defeat a motion for summary judgment only "by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in [its] favor, to establish the existence of [an] element at trial." *Roe*, 542 F.3d at 36 (quoting *Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 100 (2d Cir. 1998)). The non-movant must advance more "than a scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Conclusory statements in affidavits or allegations in the pleadings are insufficient to defeat a motion for summary judgment. *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996).

## II.    BREACH OF CONTRACT

Breach of contract claims in New York require the following three elements: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996).

The contract as issue here primarily concerns the conveyance of the two plots of land to plaintiff and her fellow signatories. However, as noted above, the contract also incorporates the rules and regulations of the cemetery, which include and explicit requirement that a permit be furnished to defendant designating the correct grave number

for burial before a body may be interred. These burial permits may only be signed by the owner of the gravesite, or a "person authorized to order interment." (Burial Permit, Pl.'s Ex. C.) Implicit in these incorporated requirements is a contractual duty upon defendant not to place a body or cause a body to be placed in a given gravesite without the consent of its owner or other authorized individuals. This is precisely the duty owed to plaintiff that was breached when defendant placed the remains of Florence Geller in plot C-10 grave 1.

Defendant does not dispute that it owed this contractual duty to plaintiff, that plaintiff performed under the contract by making all of her installment payments towards ownership, or that it breached this duty by failing to obtain authorization from plaintiff to place the remains in her grave. Defendant also does not dispute that plaintiff was damaged as a result of this conduct by virtue of the fact that unless the body is disinterred and moved to another location, she cannot be laid to rest next to her husband when she dies.

Defendant, however, argues that this situation can be remedied in its entirety by plaintiff authorizing[2] defendant to exhume the body and move it to another location, and that by not doing so she has failed to mitigate her damages. (Def.'s Br. at 17.) Whereas mitigation of damages typically relates to the amount of a claimant's recovery if liability is established, here, defendant argues that because of the nature of the harm, *viz.* the inability to be buried next to plaintiff's husband, plaintiff's failure to mitigate "acts to *void* her claim to breach of contract." (*Id.*(emphasis added))

---

[2] Under New York Not-for-Profit Corporation Law, absent a court order, disinterment requires the consent of the deceased's heirs as well as that of the owner of the plot in which the deceased is buried. N.Y. N-PCL § 1510(e).

The asserted duty to mitigate in this particular situation, of course, places a rather exceptional burden on plaintiff. In order to be able to rest next to her husband at death, plaintiff must elect to have her sister's body disinterred and moved to another plot, a choice that plaintiff describes as against both her moral and religious beliefs. (Pl.'s Dep. at 31.) Plaintiff testified that disinterring a body is "wrong" and that "under no circumstances" would she authorize her sister's body being moved. (*Id*. at 32-33.)

"The law imposes upon a party subjected to injury from breach of contract, the duty of making *reasonable* exertions to minimize the injury." *Holy Properties Ltd., L.P. v. Kenneth Cole Prods.*, 87 N.Y.2d 130, 133, 661 N.E.2d 694 (1995) (emphasis added); *see also Spier v. Barker*, 35 N.Y.2d 444, 451, 323 N.E.2d 164 (1974) (Mitigation of damages "precludes recovery for any damages which could have been eliminated by reasonable conduct on the part of the plaintiff."). Whether plaintiff acts reasonably in refusing to have her sister's body removed raises issues of fact, which cannot be determined as a matter of law. *See Leeward Constr., Inc. v. Sullivan W. Cent. Sch. Dist.*, 2010 U.S. Dist. LEXIS 49574 at*32 (S.D.N.Y. Mar. 10, 2010) ("The issue of mitigation of damages is generally a jury question.")(citations omitted).

Accordingly, mitigation in this case would normally have to be decided by a jury. However, mitigation of damages in breach of contract cases is considered an affirmative defense in New York, *see Bank of Am., N.A. v. J.P.T. Automotive, Inc.*, 52 A.D.3d 553, 555 (2d Dep't 2008), and "[t]he general rule in federal courts is that a failure to plead [this] affirmative defense results in a waiver." *Travellers Int'l, A.G. v. Trans World Airlines.*, 41 F.3d 1570, 1580 (2d Cir. 1994). As defendant failed to assert this affirmative defense in its Answer, it has been waived.

In the alternative, defendant also argues that plaintiff's failure to authorize the disinterment of her sister's remains "acts as a waiver of defendant's anticipatory breach." (Def.'s Br. at 17.) This argument is unavailing. First, despite defendant's argument to the contrary, plaintiff is not bringing a claim for anticipatory breach—which, notably, is typically asserted as a defense to a breach of contract claim—rather, she is asserting a simple claim for breach. Defendant possessed a continuing contractual obligation not to permit anyone's remains to be buried in plaintiff's gravesite without her permission. Defendant breached that obligation. Second, as noted above, plaintiff has fully performed under the contract. "In New York, the doctrine of anticipatory breach is only available as a defense to continued performance by the injured party and therefore is not appropriate if the party invoking the doctrine has fully performed." *Reprosystem, B.V. v. SCM Corp.*, 630 F. Supp. 1099, 1101 (S.D.N.Y. 1986).

Finally, plaintiff's breach of contract claim, as articulated in her Complaint, pertains both to "the contract with plaintiff" and "the contract of which plaintiff was a third party." (Compl. ¶ 47.) Plaintiff's contract with defendant consists of an initial page with contents that are applicable to all parties to the agreement, namely Abraham and Florence Geller, plaintiff and her husband, and Arthur and Trudy Kreutzer. (Def.'s Ex. C.) However, the pages that follow refer to separate contracts numbered 19532 and 19532-A. (*Id.*) The first pertains to plaintiff, her husband, and the Kreutzers, while the second pertains to the Gellers. Plaintiff appears to suggest that she was a third-party beneficiary to contract 19532-A, in that if Florence Geller was buried in C-9 grave 2 as intended, plaintiff would benefit from lying next to her sister upon death.[3]

---

[3] Plaintiff does not articulate a theory in her moving or opposition papers how exactly she would benefit from the Geller's contract with defendant.

Under New York law, "[a] party asserting rights as a third-party beneficiary must establish (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost." *Madeira v. Affordable Hous. Found., Inc.*, 469 F.3d 219, 251 (2d Cir. 2006)(quoting *State of Cal. Pub. Emps. Ret. Sys. v. Shearman & Sterling*, 95 N.Y.2d 427, 741 N.E.2d 101 (2000) (internal quotation marks omitted)). "A non-party is an intended third-party beneficiary if (inter alia) 'recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties.'" *Consol. Edison, Inc. v. Northeast Utils.*, 426 F.3d 524, 527 (2d Cir. 2005)(citing and quoting Restatement Second of Contracts § 302 and *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 66 N.Y.2d 38, 44, 485 N.E.2d 208 (1985)).

Here, the contract specifies that Abraham and Florence Geller collectively owned all four graves in plot C-9, but the agreement does not indicate who would occupy each grave, nor does it indicate who would occupy each grave in the adjacent plot, which is subject to a separate contract. Those decisions were not made until the burial permits were issued at the time of death. (*See* Burial Permits, Def.'s Exs. L and M.) Therefore, to the extent anyone in plot C-10 would benefit from lying next to someone buried in either of the two right-side graves in C-9, the identity of such individual was not apparent at the time the contract was signed by defendant, nor is it apparent from the contract that the parties intended to confer any benefit at all on those who would be put to rest in the adjacent plot. Moreover, although plaintiff testified that Abraham Geller was supposed to be buried in C-9 grave 1, and Florence next to him in C-9 grave 2, (*see* Pl. Dep. at 18),

there is no evidence that Abraham or Florence, who were in direct privity with the contract presently at issue, intended for that to occur. In fact, any suggestion that Florence intended to occupy C-9 grave 2 is belied by the fact that she herself authorized Abraham to be buried in that same spot. (*See* Burial Permit, Def.'s Ex. M.) As plaintiff fails to proffer evidence that the parties to the primary contract intended to confer benefit on her, plaintiff's third-party beneficiary claim must be dismissed.

Plaintiff's motion for summary judgment as to liability is therefore granted as to plaintiff's direct claim for breach of contract, but denied as to plaintiff's third-party claim. Likewise, defendant's cross motion for summary judgment is denied as to the former claim, and granted as to the latter.

## III.  NEGLIGENCE

To prevail on a claim for negligence in New York, the plaintiff must establish: "(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." *Alfaro v. Wal-Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000)(quoting *Akins v. Glens Falls City Sch. Dist.*, 53 N.Y.2d 325, 333, 424 N.E.2d 531 (1981)).

Plaintiff's two causes of action for negligence articulate three separate grievances against defendant, which can be identified as follows: (1) that Florence Geller was buried in plaintiff's grave, (2) that Florence Geller was buried in the wrong grave, and (3) that Abraham Geller was buried in the wrong grave. Although the first and second of these claims may appear to be one and the same, for reasons that will be explained *infra*, they

10

represent two distinct components of plaintiff's negligence cause of action.  The Court addresses each of these claims in turn below.

### a.  The Placement of Florence Geller's Body  in Plaintiff's Grave

Here, plaintiff alleges that defendant owes plaintiff a duty to "ensure that no one was buried in the grave reserved for [plaintiff's] burial." (*Id.* ¶ 32.)  In the interest of clarity, the Court notes that this particular claim is not dependent on the fact that the body interred in plaintiff's grave happens to be her sister's.  The essence of this claim would remain the same if, for instance, defendant placed the remains of a stranger in plaintiff's grave without first obtaining plaintiff's authorization.  The Court also reiterates that defendant does not dispute that it caused the body to be placed in plaintiff's gravesite (C-10 grave 1), that it was required to obtain plaintiff's authorization before doing so, and that it did not obtain this authorization.  Nevertheless, defendant argues that this particular negligence claim is foreclosed because it implicates a duty to plaintiff that already exists in the parties' contract.  Claims sounding in negligence must be "[]sufficiently distinct from the breach of contract claim to be viable." *TVT Records v. Island Def Jam Music Group*, 412 F.3d 82, 91 (2d Cir. 2005).

> It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated. This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract.

*Clark-Fitzpatrick, Inc. v Long Is. R.R. Co.*, 70 NY2d 382, 389, 516 N.E.2d 190, 521 N.Y.S.2d 653 (1987).

As noted in the previous section regarding plaintiff's contract claim, the contractual duty at issue is defendant's obligation to ensure that no remains are placed in

a gravesite without the consent of the owner of the grave or other authorized individuals. There can be little doubt that the duty identified in plaintiff's negligence claim is, for present purposes, the same obligation imposed upon defendant in the contract. Plaintiff's arguments to the contrary insist that the agreement "has no terms discussing whether defendant is authorized to permit anyone other than the deed holder(s) to be buried in the plots." (Pl.'s Opp. at 16.) However, this assertion ignores the parties' obligations as set forth in the incorporated rules and regulations of the cemetery which, as discussed earlier, do include the duties articulated in the present claim.

Plaintiff also counters that exceptions to the general rule exist where a duty independent of the defendant's contractual obligations are imposed by statute. (Pl.'s Opp. at 19 (citing *Reade v. SL Green Operating Partnership*, LP, 30 A.D.3d 189 (1st Dep't 2006)).) As cited above in footnote 2, New York's Not-for-Profit Corporation Law, § 1510(e), imposes on cemeteries the same obligation identified in the contract. However, to the extent that an actionable, duty independent of the contract springs from this statute, such a claim for negligence in the present case would necessarily fail because here plaintiff's only alleged harm is for emotional distress. As will be discussed further below, plaintiff's claim for negligence pertaining to her inability to be buried next to her husband does not fall within the prescribed causes of action in which New York courts allow for recovery solely for emotional harm.

With exceptions, New York courts are generally reluctant to award damages for emotional harm where unaccompanied by physical injury. *See Ornstein v. New York City Health & Hosps. Corp.*, 10 N.Y.3d 1, 881 N.E.2d 1187 (2008)*; Kennedy v. McKesson Co.*, 58 N.Y.2d 500, 504, 448 N.E.2d 1332 (1983); *see also Vumbaca v. Terminal One*

*Group Ass'n, L.P.* at *60-*64, 2012 U.S. Dist. LEXIS 55542 (E.D.N.Y. Apr. 19, 2012).

One of the recognized exceptions arises where one's right to sepulcher is involved. "The common-law right of sepulcher gives the next of kin the absolute right to the immediate possession of a decedent's body for preservation and burial, and … damages will be awarded against any person who unlawfully interferes with that right or improperly deals with the decedent's body." *Henderson v Kingsbrook Jewish Med. Ctr.*, 91 A.D.3d 720, 720-21 (2d Dep't 2012) (citing *Melfi v. Mount Sinai Hosp*., 64 A.D.3d 26, 31 (1st Dep't 2009)); *see also Johnson v. State*, 37 N.Y.2d 378, 382, 334 N.E. 2d 590 (1975) (describing the right to recovery as a "violation of the relative's quasi-property right in the body."); *Massaro v. Charles J. O'Shea Funeral Home, Inc.*, 292 A.D.2d 349, 351 (2d Dep't 2002) (citing and quoting *Lott v. State*, 32 Misc. 2d 296, 297 (N.Y. Ct. Cl. 1962)). In such a scenario, "there exists an especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious." *Id.* Compensatory recovery for purely emotional harm has therefore been permitted where, for example, the body of a plaintiff's wife was exhumed without his authorization. *Gostkowski v. Roman Catholic Church of Sacred Hearts of Jesus & Mary*, 262 N.Y. 320, 323 (1933).

Plaintiff adds a new twist to this "ancient"[4] right by insisting that the present claim implicates a right of sepulcher in *her own* body. In her words, she "seeks recovery for her emotional damages resulting from her inability to be buried in her grave, next to her husband." (Pl.'s Opp. at 22.) She concedes that this "is not a traditional sepulcher case." (*Id.*) However, the right to sepulcher is "the legal right of the surviving next of kin [or "close relative," *see, e.g. Johnson*, 37 N.Y.2d at 382] to find 'solace and comfort' in

---

[4] *See Melfi,* 64 A.D.3d 26 for a history of the right to sepulcher.

13

the ritual of burial." *Melfi*, 64 A.D.3d at 32. Damages are therefore only recoverable by close relatives who have suffered emotional trauma as a result of the deprivation of that right.

> While no action can be maintained by the executor or administrator upon the theory of any property right in a decedent's body, the right to the possession of a dead body for the purpose of preservation and burial belongs to the surviving husband or wife or next of kin, in the absence of any testamentary disposition; and this right the law will recognize and protect from any unlawful mutilation of remains by awarding damages for injury to the feelings and mental suffering resulting from the wrongful acts

*Darcy v. Presbyterian Hospital in New York*, 202 N.Y. 259, 262, 95 N.E. 695 (1911)(citing *Larson v. Chase*, 47 Minn. 307 (1891)).

Plaintiff proffers neither a convincing argument, nor authority for this Court to recognize the extraordinary right to possess a present solace and comfort on one's own future burial. Accordingly, defendant's motion for summary judgment as to this particular negligence claim is granted and plaintiff's corresponding motion as to this same claim is denied. In reaching this conclusion, the Court does not mean to minimize the impact of plaintiff's inability to rest next to her husband due to no fault of her own, and credits that plaintiff truly feels that she has been aggrieved. Nevertheless, the simple fact remains that New York law does not appear to permit recovery solely for emotional damages in such a scenario.

### b. The Improper Burial of Florence Geller

Plaintiff's next claim for negligence asserts that defendant owed a duty to plaintiff "refrain from negligent conduct in burying her family members," (Compl. ¶ 31) and that

defendant breached that duty by causing "Florence Geller to be laid to rest in an incorrect grave," (Compl. ¶ 34). As a close relative of the deceased, this claim does implicate plaintiff's right to sepulcher. Therefore, unlike the claim immediately above (see subsection III a), this allegation does not depend on the fact that Florence Geller was buried in plaintiff's grave *per se*, but merely on the fact that she was buried in the *wrong* grave. Also distinguishable from the previous claim is that this claim is entirely dependent on the fact that Florence Geller is plaintiff's sister. It is also necessary to establish at the outset that this claim does not implicate any duty that dovetails with the contractual obligations that defendant owed to plaintiff. The duties that defendant owed plaintiff under the contract relate to plaintiff's gravesite, not the handling of Florence Geller's body.

Defendant objects to an award of recovery under this theory on two main grounds. First, defendant argues that there was no interference with plaintiff's immediate possession of the body, see (Pl.'s Br. at 15 (citing *Melfi*, 64 A.D.3d 26)), and that there was no actual mishandling of the corpse (*id.* at 13 (citing *Estate of LaMore v. Sumner*, 46 A.D.3d 1262 (3d Dep't 2007))). Defendant argues, for example, that the instant case is distinguishable from *Massaro*, where the contents of a cracked casket emitted noxious fumes, *Massaro*, 292 A.D.2d at 350, or from *LaMore*, where recovery was denied where the body was not actually "mishandled" during disinterment or re-interment, *LaMore*, 46 A.D.3d at 1264.

However, New York courts have adopted language which recognizes recovery under the right of sepulcher in situations beyond where the defendant merely interferes with the "immediate" right to possession or physically desecrates or mishandles the body.

Specifically, recovery is actionable where the defendant "improperly deals" with the body. *Henderson v Kingsbrook Jewish Med. Ctr.*, 91 A.D.3d 720, 720-21 (2d Dep't 2012)(quoting *Melfi*, 64 A.D.3d at 31); *Nesbit v. Turner*, 15 A.D.3d 552, 553 (2d Dep't 2005). The New York case originally articulating the "improperly deals" language, and which is widely cited by New York courts, states the following:

> In decisions affecting this type of action, the courts are not primarily concerned with the extent of the physical mishandling or injury to the body per se, but rather how such improper handling or injury affects the feelings and emotions of the surviving kin. The rule was succinctly stated by the court in *Sworski v. Simons* (208 Minn. 201, 205): "The cause of action is primarily for mental suffering caused by improper dealing with and not the injury to the dead body."

*Lott v. State*, 32 Misc. 2d 296, 298 (N.Y. Ct. Cl. 1962).

In *Gostkowski*, 262 N.Y. 320, for example, the court permitted recovery where defendant disinterred and moved the body of plaintiff's wife to another plot without plaintiff's authorization. It stands to reason that a cause of action would be recognized where the body is initially placed in the wrong grave without the authorization of the deceased's family. Accordingly, defendant's first argument is unpersuasive.

Defendant's second objection to this claim suggests that plaintiff cannot assert this claim because as Florence Geller's sister, she is not her next of kin. However, as cited above, courts generally limit recovery under these cases to "next of kin," *see, e.g., Melfi*, 64 A.D.3d at 31, or "close relative[s]," *see, e.g. Johnson*, 37 N.Y.2d at 382. For example, in *Melfi*, 64 A.D.3d 26, recovery was allowed for a claim brought by the sibling of the deceased – the same relationship at issue in the present case.

However, New York courts have also made clear that such claims may not be made piecemeal by each family member who may be entitled to recovery under the right to sepulcher. Instead, individual family members must join together in a single action. *See Brown v. Broome County*, 8 N.Y.2d 330, 333, 170 N.E.2d 666 (1960)(citing *Gostkowski*, 262 N.Y. at 324); *Wainwright v. New York City Health & Hosps. Corp.*, 61 A.D.3d 852, 853 (2d Dep't 2009). Defendant avers in its brief that Florence Geller has two living adult sons, Edward and Clifford Geller. (Def.'s Br. at 16.) Neither of these individuals is a plaintiff in this action.

Accordingly, plaintiff's motion for summary judgment on this particular claim must be denied without prejudice to renew upon a showing that all necessary parties to this action, to the extent they exist, have been joined herein. Defendant's motion for summary judgment on this same claim is denied.

.

### c. *The Improper Burial of Abraham Geller*

Although not addressed by either party, plaintiff's claim that defendant negligently buried Abraham Geller in the wrong grave fails as a simple matter of fact. The Complaint alleges that defendant was "advised" that Abraham was to be buried in C-9 grave 1. (*See* Compl. ¶ 18.) However, there is no evidence in the record that defendant was ever "advised" to do so. No such instructions were included in the contract, and, as mentioned in the prior section of this opinion, upon Abraham Geller's death on July 25, 2005, Florence Geller actually instructed defendant to lay him to rest in C-9 grave 2. (Burial Permit, Def's. Ex. M.) As the record indicates, this is precisely where he was buried. Therefore, given that defendant was explicitly instructed by Abraham's wife to

bury him in the same grave where he now lies, plaintiff's claim that defendant

negligently caused him to be placed in the wrong grave must fail.

Likely in recognition of this evidence, plaintiff states in a footnote to her

memorandum that she is not seeking summary judgment on this claim. (Pl.'s Br. at 1,

n.1.)  For reasons not evident to the Court, however, plaintiff does not go so far as to

withdraw this claim.   Plaintiff's negligence claim as it pertains to the burial of Abraham

Geller is hereby dismissed.


**IV.    STANDING**

Defendant argues that plaintiff lacks standing to bring a negligence claim because

defendant did not owe plaintiff a duty of care, and because plaintiff was not sufficiently

close in relation to Florence Geller. (Def.'s Br. at 5-8.)  These arguments were both

addressed *supra*, and for the reasons stated in therein, neither is availing to defendant's

motion.


**V.    PLAINTIFF'S MOTIONS TO STRIKE**

Plaintiff moves within her motion for summary judgment to strike certain

affirmative defenses set forth in defendant's Answer.  Rule 12(f) permits the Court to

"strike from a pleading an insufficient defense or any redundant, immaterial, impertinent,

or scandalous matter." Fed. R. Civ. P. 12(f). "A motion to strike an affirmative defense

under Rule 12(f). . . for legal insufficiency is not favored." W*illiam Z. Salcer, Panfeld,*

*Edelman v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984), vacated on other

grounds, 478 U.S. 1015, 106 S. Ct. 3324, 92 L. Ed. 2d 731 (1986). Such a motion "will

not be granted 'unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense.'" *Id.* (quoting *Durham Indus., Inc. v. N. River Ins. Co.*, 482 F. Supp. 910, 913 (S.D.N.Y. 1979)). "Three prerequisites must be satisfied before a court may grant a motion to strike defenses." *F.D.I.C. v. Pelletreau & Pelletreau*, 965 F. Supp. 381, 389 (E.D.N.Y. 1997). A plaintiff must show that: "(1) there is no question of fact which might allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; and (3) the plaintiff would be prejudiced by inclusion of the defense." *Houston v. Manheim-New York*, 2010 U.S. Dist. LEXIS 18965 (S.D.N.Y. Mar. 3, 2010) (citing *SEC v. McCaskey*, 56 F. Supp. 2d 323, 326 (S.D.N.Y. 1999)).

As to the first affirmative defense, which seeks attorney's fees for filing frivolous claims, defendant insists that this defense is viable because plaintiff's negligence claims "have no basis in the law." (Def.'s Opp. at 8.)   Although, plaintiff did not ultimately prevail on all of her negligence claims, her arguments were not without color.  The Court is therefore not inclined to deem such arguments as frivolous. Defendant's first affirmative defense is therefore struck as without merit.

Defendant's second affirmative defense alleges that plaintiff's injuries were caused by her own negligence.  Defendant bases this defense solely on the fact that plaintiff has not authorized her sister's remains to be disinterred.  Because the issue of damages must still be decided by a jury, the Court declines to strike this affirmative defense.  As an aside, the substance of this affirmative defense for contributory negligence mirrors defendant's argument that plaintiff has not mitigated her damages under the contract.  Nevertheless, the Court's decision to allow this contributory

negligence defense to stand should not be read to infer that defendant has pled mitigation of damages under breach of contract in its Answer. As discussed in more detail above, defendant has failed to assert this contract defense, and has such it has been waived.

Defendant's fourth affirmative defense that plaintiff lacks standing is hereby struck for the reasons set forth above regarding plaintiff's standing to bring her claims.

Defendant's fifth affirmative defense that plaintiff has not stated a claim for relief is struck as to all of plaintiff's claims which have been determined *supra* to survive defendant's motion for summary judgment.

The sixth affirmative defense claims that defendant acted reasonably and in good faith pursuant to New York Public Health Law §4201. As this defense pertains to the burial of Florence Geller in the wrong grave, defendant has set forth no plausible argument or sufficient facts to demonstrate that it acted reasonably. The burial permit clearly instructs that her remains were to be placed in plot C-9 grave 1; she was not laid to rest in that grave. The sixth affirmative defense is therefore struck.

Finally, the seventh affirmative defense is struck as the cited statute, N.Y. N-PCL § 720(a) pertains solely to individuals. No individuals are being sued in this action.


**CONCLUSION**

For the reasons stated above, plaintiff's motion for summary judgment as to liability for breach of contract is granted and defendant's corresponding motion as to this claim is denied. Plaintiff's summary judgment motion for liability as to her claim for negligence for the improper burial of Florence Geller's remains is denied without prejudice to renew upon further action regarding the joinder of necessary parties. All

other negligence claims are dismissed with prejudice. The Court hereby strikes defendant's first, fourth, fifth, sixth, and seventh affirmative defenses.

Defendant's motion for summary judgment is granted as to plaintiff's claims for negligence pertaining to the improper burial of Abraham Geller, and the burial of Florence Geller in plaintiff's grave.  Defendant's motion is denied as to all other claims.


SO ORDERED.


Dated: Central Islip, New York
       September 7, 2012                              _____/s_____
                                                     Denis R. Hurley
                                                     United States District Judge